UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAVID BONENBERGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:12CV21 CDP |
| | ) |
| ST. LOUIS METROPOLITAN | ) |
| POLICE DEPARTMENT, et al. | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

Plaintiff David Bonenberger, who is white, claims that he was not given the position of Assistant Director of the St. Louis Police Academy because of his race. Bonenberger has sued the St. Louis Metropolitan Police Department, the Board of Police Commissioners, six former and current members of the Board of Police Commissioners and three officers of the Police Department: Chief Daniel Isom, Lt. Col. Reggie Harris, and Lt. Michael Muxo. Bonenberger's five-count complaint alleges racial discrimination and conspiracy in violation of federal and state statutes.

Defendants now move for summary judgment, arguing that Bonenberger has not adduced sufficient evidence on any of his claims and also claiming qualified immunity. I conclude that Bonenberger has established issues of fact regarding racial discrimination and civil conspiracy, and so I will deny summary judgment as to those issues. I also

conclude that the individual police officers are not entitled to qualified immunity. However, Bonenberger has not shown any genuine disputes of fact that would allow his claims of municipal liability to go forward, so I will grant summary judgment on Count V.

## I.     BACKGROUND

Plaintiff Sgt. David Bonenberger, a white male, alleges that he applied for the Assistant Directorship of the St. Louis Police Academy and was denied the position because of his race. The Assistant Director reports to Lt. Muxo, the Director of the Academy. Muxo reports to Lt. Col. Harris, who, in turn, reports to Chief Isom.

The Department posting for the Assistant Academy Director position listed minimal qualifications that included three years of supervisory experience. Three candidates applied for the position: Sgt. Bonenberger, Sgt. Angela Taylor (an African American female), and Sgt. James Buckeridge (a white male). None of the three candidates met the minimum threshold of three years of supervisory experience. Only Sgt. Buckeridge was interviewed; during this interview he was told that he would not be considered because he lacked the full three years of supervisory experience. Lt. Muxo eventually recommended to Lt. Col. Harris that Taylor be detached, meaning temporarily placed into the position. Lt. Col. Harris passed that recommendation along to Chief Isom, who instead transferred, or permanently assigned, Taylor into the Assistant Directorship.

Bonenberger filed a grievance with the Department requesting an interview with unbiased personnel present. In his grievance, he did not mention racial discrimination, but merely complained that departmental procedures were not followed. He also filed a race-discrimination complaint with the EEOC, which issued a right-to-sue letter. In response to Bonenberger's grievance, Chief Isom stated that he transferred Taylor because of his own knowledge of Taylor's qualifications and Lt. Muxo's recommendation. Isom specifically cited that Taylor had "the most time in rank and a clean disciplinary background." Neither of those things was actually true.

Bonenberger alleges that after the position was posted, but before he applied, Lt. Muxo told him that he "shouldn't put in for it because the position was going to a black female" and that the decision came from Lt. Col. Harris. Bonenberger further testified that after he filed his grievance within the Department, Lt. Muxo sought him out and told him that the position went to Sgt. Taylor because Lt. Muxo "had to bring color to the Academy." Sgt. Deborah Boelling, the Assistant Director immediately preceding Sgt. Taylor, stated that when she recommended Bonenberger for the position, Lt. Muxo responded that "Lt. Col. Harris wanted a black female in the position . . . [and] that there was no way Lt. Col. Harris would put a white male in the position."[1] Lt. Muxo denies making these statements. The Department has written policies prohibiting discrimination of all types and setting forth procedures for addressing discrimination in the workplace.

---

[1] For purposes of the qualified immunity analysis, these are the facts I am considering in the light most favorable to Bonenberger. *See Robbins v. Becker*, 715 F.3d 691, 694 (8th Cir. 2013).

## II. <u>DISCUSSION</u>

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings but must set forth by affidavit or other evidence specific facts showing that a genuine issue of material facts exists. Fed. R. Civ. P. 56(e). At the summary judgment stage, I will not weigh evidence and decide the truth of the matter, but rather I need only determine if there is a genuine issue of material fact. *Anderson,* 477 U.S. at 249.

### A. *Claims Against the Board of Police Commissioners and Title VII Claims Against Individual Defendants*

As a preliminary matter, some defendants argue that they are entitled to summary judgment because they are being sued under improper names or in capacities for which they are exempt from liability.

Defendant Board of Police Commissioners argues that it is entitled to summary judgment on all counts, because it may only be sued through its members. Plaintiff has named the individual members as defendants, but also named the Board itself. The

- 4 -

Missouri Court of Appeals has specifically held that "the St. Louis Board of Police Commissioners may only be sued by bringing an action against the individual members of the Board in their official capacity." *Best v. Schoemehl*, 652 S.W.2d 740, 742 (Mo. Ct. App. 1983). "An action against the 'St. Louis Board of Police Commissioners' in that name does not lie." *Id.*; *see also Edwards v. Baer*, 863 F.2d 606, 609 (8th Cir. 1988) ("The St. Louis Board of Police Commissioners is not a suable entity. Jurisdiction can only be obtained by suing its individual members.") (internal quotation and alteration omitted). Therefore, the Board of Police Commissioners, in that name, is entitled to summary judgment on all counts.

Bonenberger's complaint makes discrimination claims against officers Isom, Harris, and Muxo and against commissioners Battle-Turner, Gray, and Slay in their individual and official capacities. Bonenberger's complaint also asserts claims against former board members Gerdine and Lee in their individual capacities only. All of these claims are based on Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Missouri Human Rights Act (MHRA), R.S. Mo. §213.010, *et seq.* Title VII, unlike the other statutes, does not authorize liability against individual supervisors or coworkers. *Lenhardt v. Basic Institute of Tech., Inc.*, 55 F.3d 377, 381 (8th Cir. 1995). For that reason, the Title VII claims against those defendants, in their individual capacities only, will be dismissed.

## B. *Discrimination Claims*

Counts I, II, and III of Bonenberger's complaint allege that he was discriminatorily denied consideration for the position of Assistant Director because of his race, in violation of Title VII, the MHRA, § 1983, and §1981. Defendants argue that they are entitled to summary judgment because Bonenberger cannot show direct evidence of discrimination or establish a prima facie case of discrimination.

Discriminatory intent is common to each of Bonenberger's claims in these counts, and each claim uses the same analysis. *See Tipler v. Douglas Cnty., Neb.*, 482 F.3d 1023, 1027 (8th Cir. 2007) (applying similar analysis for Title VII and § 1983 claims based on equal-protection violations); *Evans v. Siegel-Robert, Inc.*, 139 F. Supp. 2d 1120, 1124 (E.D. Mo. 2001) (Title VII, MHRA, 42 U.S.C. § 1981) (citing *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1055 (8th Cir. 1997) and *Finley v. Empiregas, Inc.*, 975 F.2d 467, 473 (8th Cir. 1992)); *Midstate Oil Co., Inc. v. Mo. Comm'n on Human Rights*, 679 S.W.2d 842, 846 (Mo. banc 1984); *see also Hill v. Ford Motor Co.*, 277 S.W.3d 659, 665 (Mo. banc 2009) (holding that the MHRA provides greater protection for workers than Title VII). Therefore, I will analyze Bonenberger's Title VII, § 1981, MHRA, and § 1983 Fourteenth-Amendment claims together.

A plaintiff in a race discrimination case can proceed under two alternative theories. First, the plaintiff can present evidence demonstrating that race was a motivating factor in the employment decision. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, No. 12-484, 2013 WL

3155234 (U.S. June 24, 2013) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989)). In order to do so, the plaintiff must present direct or circumstantial evidence "showing a specific link between discriminatory animus and the challenged decision, sufficient to support a finding that an illegitimate criterion actually motivated the challenged decision." *Philipp v. ANR Freight Sys., Inc.*, 61 F.3d 669, 673 (8th Cir. 1995) (internal quotations omitted) (citing *Stacks v. Sw. Bell Yellow Pages*, 996 F.2d 200, 201 n.1 (8th Cir. 1993)). If the plaintiff makes this threshold showing, the burden of persuasion shifts to the employer to prove that it would have made the same decision even without the illegitimate criterion. *Cram v. Lamson & Sessions Co.*, 49 F.3d 466, 471 (8th Cir. 1995). This showing by the employer will not defeat a discrimination claim but instead restricts the plaintiff's available remedies. *Nassar*, 2013 WL 3155234, at *8 (citing 42 U.S.C. § 2000e-5(g)(2)).

If, however, the plaintiff fails to provide direct evidence, the court applies the traditional burden shifting framework set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *Hammer v. Ashcroft*, 383 F.3d 722, 724 (8th Cir. 2004). Within the *McDonnell-Douglas* framework, a plaintiff must establish a prima facie case of discrimination, after which the burden shifts to the employer to establish a legitimate, nondiscriminatory reason for taking the allegedly discriminatory action. *Id.* To establish a prima facie case in a claim alleging reverse discrimination, a plaintiff must prove that 1) he is white; 2) he applied and was qualified for an open position; 3) he was rejected; and

4) after rejecting plaintiff, the employer hired someone of a minority race with the plaintiff's qualifications. *Id.*; *see also Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957–58 (8th Cir. 1995). The plaintiff must also show "that background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Hammer*, 383 F.3d at 724 (quotations and citations omitted). If the employer establishes a legitimate, nondiscriminatory reason for acting, the plaintiff must then show that the employer's proffered reason is pretextual or his claim will fail. *Id.* I conclude that Bonenberger has presented sufficient evidence to survive summary judgment under either test.

First, a genuine dispute exists regarding whether Bonenberger suffered an adverse employment action. Adverse employment action refers to disadvantageous changes in working conditions, including changes that affect future career prospects. *See MacGregor v. Mallinckrodt, Inc.*, 373 F.3d 923, 930 & n.5 (8th Cir. 2004). Defendants argue that there was no adverse action, because the Assistant Director position did not include increased rank or pay. Bonenberger has produced evidence from which a fact-finder could conclude that the Assistant Director is a high-visibility position that provides greater chances for promotion. This evidence is sufficient to show that a genuine dispute exists to preclude summary judgment on this issue.

Defendants argue that there is no direct evidence of discrimination because Muxo's statements to Bonenberger and Boelling constitute inadmissible hearsay. But Muxo's

statements do not constitute hearsay when used against Muxo himself, in either his individual or official capacity, as they are statements by an opposing party. Fed. R. Evid. 801(d)(2)(A). Additionally, Muxo's statements may be attributed to the Department and, insofar as they are being sued in their official capacities, to Battle-Turner, Gray, Slay, Irwin, Isom, and Harris under Rule 801(d)(2)(D), as they are statements "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." *See English v. Dist. of Columbia*, 651 F.3d 1, 7 (D.C. Cir. 2011) (citing *Wilburn v. Robinson*, 480 F.3d 1140, 1148 (D.C. Cir. 2007)).

Defendants next argue that Muxo's statements do not show discrimination, because Chief Isom, and not Muxo or Harris, was the ultimate decision maker. Under the "cat's paw" theory, relied upon by Bonenberger, "an employer cannot shield itself from liability for unlawful termination by using a purportedly independent person or committee as the decisionmaker where the decisionmaker merely serves as the conduit, vehicle, or rubber stamp by which another achieves his or her unlawful design." *Qamhiyah v. Iowa State Univ. of Sci. & Tech.*, 566 F.3d 733, 742 (8th Cir. 2009) (quotation omitted); *see also Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1192 (2010) (likening employment discrimination claims to torts that have potential multiple proximate causes). "[I]f a non-decisionmaker performs an act motivated by a discriminatory bias that is intended to cause, and that does proximately cause, an adverse employment action, then the employer

has cat's-paw liability." *Marez v. Saint-Gobain Containers, Inc.*, 688 F.3d 958, 964 (8th Cir. 2012).

Chief Isom testified that he primarily relied upon Muxo's recommendation when filling the Assistant Director position. He further testified that when making transfer decisions, he relies upon the operational needs of the police department, "a lot of [which] depends upon the recommendation of the commander." Viewing these facts in the light most favorable to the plaintiff, Bonenberger has raised a question of fact as to whether Muxo's recommendation caused Chief Isom to transfer Taylor instead of Bonenberger.

Because Bonenberger has presented direct evidence of discrimination, I need not engage in the complete analysis under *McDonnell-Douglas*. But the evidence discussed above shows that Bonenberger has established genuine disputes of material fact sufficient to survive summary judgment on his claims of race discrimination under either standard.

## C. *Conspiracy*

Count IV is a § 1983 claim that Isom, Harris, and Muxo conspired to promote Taylor over Bonenberger because of race and to cover up that discrimination in violation of Bonenberger's right to equal protection. Defendants contend that they are entitled to summary judgment for failure to show an agreement by the conspirators. In order to show a constitutional conspiracy, a party must show that two or more individuals conspired for the purpose of depriving, either directly or indirectly, a person or persons of their right to equal protection of the laws or of equal privileges and immunities under the

laws and that an act was done in furtherance of the conspiracy that caused an injury or deprivation to another. *Marti v. City of Maplewood, Mo.*, 57 F.3d 680, 685 (8th Cir. 1995). To withstand summary judgment, a plaintiff must "allege with particularity and specifically demonstrate material facts that defendants reached an agreement." *Reasonover v. St. Louis Cnty., Mo.*, 447 F.3d 569, 582 (8th Cir. 2006).

Bonenberger has provided sufficient evidence of a conspiracy between Harris, Muxo, and Isom to show that a genuine issue remains for trial. Muxo told Bonenberger and Boelling that Harris wanted a black female in the position, and told Bonenberger on a second occasion that he had received orders to "bring color to the Academy." This evidence, if believed, is more than sufficient to show that Muxo and Harris conspired with one another.

In response to Bonenberger's grievance, Isom replied that his decision to transfer Taylor was made based in part upon his knowledge that Taylor had more time in rank than Bonenberger and that she had a clean disciplinary record and in part upon recommendations from Muxo. But Taylor and Bonenberger were promoted to sergeant on the same day, so she did not have more time in rank. Moreover, Taylor's disciplinary history included several sustained charges for which she was reprimanded and received an extended probationary status, so she did not have a clean disciplinary record. Because Bonenberger has evidence that Isom's initial stated reasons were false, a jury could reasonably infer that Isom was also a party to the conspiracy between Harris and Muxo to

- 11 -

use race in Taylor's promotion and to conceal that use by fabricating qualifications after the fact.

D.   *Qualified Immunity*

Defendants' summary judgment motion initially claimed both qualified and Eleventh Amendment immunity for Isom, Harris, and Muxo on the § 1983 and § 1981 claims. In their reply brief defendants conceded that Eleventh-Amendment immunity does not apply; the reply brief does not even mention qualified immunity. Defendants' original brief does no more than cite the standards for qualified immunity, without providing any argument for why it might apply here. I am required, nevertheless, to conduct a qualified immunity analysis. *See O'Neil v. City of Iowa City*, 496 F.3d 915, 917 (8th Cir. 2007).

Qualified immunity protects a government official from liability "unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

To determine whether an official is entitled to qualified immunity, the Court conducts a two-part inquiry: (1) whether the facts alleged, viewed in the light most

favorable to the plaintiff, show that the defendant violated a constitutional or statutory right, and (2) whether the right at issue was clearly established at the time of the offending conduct. *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Court may decide which determination to make first, *Pearson v. Callahan*, 555 U.S. 223, 235–36 (2009), and "the defendants are entitled to qualified immunity unless the answer to both of these questions is yes." *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012).

"A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011) (internal quotation marks and citation omitted). "A general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Winslow v. Smith*, 696 F.3d 716, 738 (8th Cir. 2012) (internal quotation marks and citation omitted). It has long been clearly established that public officials cannot intentionally discriminate against employees on the basis of their race; there is no doubt that the right at issue here was clearly established, meeting the second part of the qualified immunity analysis. *See Lockridge v. Bd. of Trs. of Univ. of Ark.*, 315 F.3d 1005, 1016 (8th Cir. 2003) (Heaney, J., dissenting on other grounds).

As to the first point of inquiry, I must consider the evidence that has been presented in the light most favorable to Bonenberger. Viewing the facts in that light, Bonenberger has produced evidence that Muxo and Harris explicitly used race as a factor in deciding not to recommend Bonenberger for the job. Isom gave reasons for his decision that were not actually true (that Taylor had more years in rank and a clean disciplinary record), which, when considered in the light most favorable to Bonenberger, could be seen as pretext for discrimination. Bonenberger has also shown that the three-year minimum experience requirements that disqualified a white candidate did not equally disqualify Taylor, the black candidate. This evidence shows that Muxo, Harris, and Isom are not entitled to qualified immunity.

E.  *Section 1983 Claims against the Commissioner Defendants and Isom in Their Official Capacities (Municipal Liability)*

Count V of Bonenberger's complaint is a § 1983 claim against Chief Isom and commissioner-defendants Battle-Turner, Gray, Gerdine, Lee, Slay, and Irwin. This count seeks to impose municipal liability based on allegations that the there was a custom and policy of race discrimination and failure to train and supervise police department employees with regard to discrimination.

The Eighth Circuit Court of Appeals recently described the contours of municipal liability:

> A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an action pursuant to

official municipal policy or misconduct so pervasive among non-policymaking employees of the municipality as to constitute a custom or usage with the force of law. To establish a city's liability based on its failure to prevent misconduct by employees, the plaintiff must show that city officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action. A plaintiff must establish (1) a continuing, widespread, persistent pattern of unconstitutional misconduct by the municipality's employees, (2) to which policymaking officials were deliberately indifferent or which policymaking officials tacitly authorized after notice to the officials of that misconduct, and (3) that custom of deliberate indifference or tacit authorization was a moving force behind the constitutional violation. A city will be liable only where a city's inaction reflects a deliberate indifference to the constitutional rights of the citizenry, such that inadequate training or supervision actually represents the city's 'policy.'

*Doe ex rel. Doe v. Gay*, No. 12-20252, 2013 WL 3064619, at \*5 (8th Cir. June 20, 2013) (internal quotations and citations omitted).

It is undisputed that the police department had policies prohibiting discrimination based on race (among other factors), but Bonenberger argues that the evidence shows the policies were not followed. His evidence to support this consists of reports of other claims of discrimination (based on race, age, and gender, some of which occurred after the events at issue here), and evidence that the board settled some of the claims that resulted in lawsuits. The evidence is disputed as to the exact number of complaints, and whether they were all reported to the Board as required by the policies.

Merely showing that other complaints were made is not sufficient to show that there was a custom or policy condoning or promoting racial discrimination. The very

records Bonenberger relies upon show that the Department investigated the complaints, even though they may not have been reported to the Board. Some of the complaints allege that blacks were treated unfavorably, and some allege that whites like Bonenberger were the victims of discrimination. What is lacking is any evidence that these complaints were substantiated.

The Court of Appeals for the Eighth Circuit "has held municipalities liable . . . when the plaintiffs have produced evidence of prior complaints sufficient to demonstrate that the municipalities and their officials ignored police misconduct." *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) (citing *Parrish v. Luckie*, 963 F.2d 201, 204–05 (8th Cir. 1992) (reviewing "detailed and compelling" evidence) and *Harris v. City of Pagedale*, 821 F.2d 499, 501–06 (8th Cir. 1987) (finding a plaintiff had proven a municipal custom through the presentation of detailed evidence regarding the particular police officer's previous misconduct and the city's failure to investigate or punish that conduct)). "Evidence that a police department failed to investigate previous incidents *similar to the incident in question* may support a finding that a municipal custom exists . . . ." *Id.* (emphasis added). "There must also be a showing that the complaints had merit, however." *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 799 (8th Cir. 1998). Absent such context, the mere existence of previous complaints does not suffice to show a municipal custom of permitting or encouraging discrimination. *See Mettler*, 165 F.3d at 1205.

The settlement agreements generally recite that there is no admission of culpability. Although Bonenberger cites to deposition testimony of one former Board member who says the Board was not routinely told of discrimination complaints, that same Board member said that they had multiple briefings on lawsuits at Board meetings and that some of the lawsuits discussed included claims of employment discrimination.

The cases cited by Bonenberger in favor of culpability are distinguishable. In *Rohrbough v. Hall*, No. 4:07CV996ERW, 2008 WL 4722742, at *13 (E.D. Mo. Oct. 23, 2008), Judge Webber found that the Board had "either intentionally or unwittingly created an insulating barrier which prevents notice of complaints from reaching the Commissioner Defendants." That case involved claims of police brutality, and the plaintiff provided evidence of 322 claims of physical abuse against the Department in the five years prior to the incident. Similarly, in *Lenderman ex rel. S.L. v. St. Louis Metro. Police Dep't Bd. of Comm'rs*, No. 4:10CV2163 (CEJ), 2012 WL 3564030, at *9–10 (E.D. Mo. Aug. 17, 2012), Judge Jackson found that sufficient evidence existed by which a jury could find the Board ignored a widespread pattern of unlawful arrest and false reporting. In that case, the plaintiff cited 23 instances of false reporting in the preceding five years in which officers were found to have submitted false reports to conceal unlawful conduct; the plaintiff also submitted the reports of 19 additional IAD investigations in which a charge of false reporting was sustained. *Id.* Bonenberger's evidence falls far short of the

voluminous complaints in *Rohrbough* and the number of actually sustained complaints in *Lenderman*.

The evidence in this case is insufficient to show a genuine dispute regarding whether the Board's "inaction reflects deliberate indifference to the constitutional rights" of its employees to show a policy of tolerating racial discrimination, or otherwise "such that inadequate training or supervision actually represents the city's 'policy.'" *Gay*, 2013 WL 3064619, at 5 (citing *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 392 (8th Cir. 2007)). I will grant summary judgment as to the claims presented in Count V.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [# 49] is granted only as to: Count V in its entirety, Title VII claims against defendants Isom, Harris, Muxo, Battle-Turner, Gray, Slay, Gerdine, and Lee in their individual capacities only, and as to all claims against the Board of Police Commissioners in that name. The motion is denied in all other respects.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 8th day of July, 2013.