UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID BONENBERGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:12CV21 CDP |
| | ) | |
| ST. LOUIS METROPOLITAN | ) | |
| POLICE DEPARTMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the court on several post-trial motions. A jury found for plaintiff David Bonenberger on his claims of race discrimination and conspiracy related to defendants' failure to transfer him to the position of Assistant Director of the St. Louis Police Academy. Defendants have moved for judgment notwithstanding the verdict, to amend judgment, or in the alternative, for a new trial. Plaintiff seeks attorney fees and expenses, costs, and supplemental equitable relief. For the reasons that follow, I will deny defendants' motion. I will also deny plaintiff's request for supplemental equitable relief. I will enter an award of attorneys fees and costs in favor of plaintiff, who is the prevailing party.

### Background

David Bonenberger, a white male, brought suit claiming that he was not given the position of Assistant Director of the St. Louis Police Academy because

of his race. Bonenberger sued the St. Louis Metropolitan Police Department, the members of the Board of Police Commissioners in their official capacities, Academy Director Lt. Michael Muxo, Lt. Col. Reggie Harris, and former Chief of Police Daniel Isom, alleging race discrimination. He also alleged that Muxo and Harris conspired to discriminate against him.

After a three day trial, the jury found in favor of Bonenberger against all defendants on the race discrimination claim and against Muxo and Harris on the conspiracy claim. It assessed Bonenberger's actual damages as $200,000. The jury awarded punitive damages against Muxo in the amount of $100,000, against Harris in the amount of $300,000, and against Isom in the amount of $20,000. I later denied Bonenberger's motion seeking to be given the Academy position as an equitable remedy, but granted other, limited, equitable relief.

Bonenberger and two other Sergeants applied for the position of Assistant Academy Director. None of the applicants possessed the three years of supervisory experience called for in the job posting. Neither Bonenberger nor Angela Taylor, the African-American female who ultimately got the job, was interviewed. In accordance with the chain of command, defendant Muxo recommended Taylor for the position to defendant Harris, and defendant Harris recommended Taylor to defendant Isom. Muxo and Harris had recommended to Isom that Taylor be temporarily detached to the position, but Isom decided to make

it a permanent transfer. He did not look at any of the candidates' applications before making the decision.

Bonenberger testified that he was told by the Academy Director, defendant Muxo, that he should not bother applying for the job because it was going to a black female. Muxo said that this was at the direction of defendant Harris, Muxo's supervisor. A previous Assistant Director, Deborah Boelling, testified that Muxo told her that Harris wanted a black female in the position. When Boelling recommended plaintiff to Muxo, he told her that there was no way Harris would allow a white man to be the Assistant Director. Boelling also testified that Muxo told her Taylor was likely to get the position. After Taylor was selected, Muxo told Bonenberger that Taylor was selected at Harris' direction to "bring color down to the Academy." When Bonenberger filed a grievance, defendant Isom denied it because Taylor had "more time in rank" and a clean disciplinary record. In fact, Taylor did not have more time in rank than Bonenberger, and she did not have a clean disciplinary record. Additionally, Bonenberger had more supervisory experience than Taylor and, unlike Taylor, had extensive experience teaching at the Academy and training officers in the field.

The Academy position would not have been a promotion for Bonenberger because it did not provide a higher rank or more money. Bonenberger and others testified, however, that it had significant supervisory duties and was a higher-

profile job that would allow Bonenberger to come into contact with more command rank officers.  Isom testified that it was a very important job within the Police Department.  Bonenberger testified that he considered it a promotion because it was his "dream job" within the force, because he would be the administrator of all the operations of the Academy and thus have an influence on new officers.  He also testified that, unlike other positions in the police force, it had regular Monday through Friday working hours and regular holidays off.

## Discussion

**1. Defendants' motion for judgment or a new trial**

Defendants argue that they are entitled to judgment as a matter of law because plaintiff failed to present evidence that the police department discriminates against Caucasians and because he failed to show he suffered an adverse employment action.  They argue alternatively that they are entitled to a new trial because the verdicts are against the weight of the evidence, and additionally because the jury instructions did not submit adverse employment action as an element of the offense.  They also assert that the evidence did not support the jury's finding of conspiracy, and that there was no evidentiary basis for the jury's award of punitive damages.  Finally, they ask the court to vacate the injunctive relief entered as to the new Chief of Police, since he was not Chief when these events occurred.

In ruling on a motion for judgment as a matter of law under Rule 50, Fed. R. Civ. P., the court must make "all reasonable inferences in favor of the nonmoving party and view[] the facts most favorably to that party." *Lee ex rel. Lee v. Borders*, 764 F.3d 966, 971 (8th Cir. 2014); *see also In re Prempro Prods. Liab. Litig.*, 586 F.3d 547, 571 (8th Cir. 2009).

A motion for new trial under Rule 59, Fed. R. Civ. P., is appropriate "when the outcome is against the great weight of the evidence so as to constitute a miscarriage of justice." *Bank of America N.A. v. JB Hanna, LLC,* 766 F.3d 841, 851 (8th Cir. 2014). When the jury instructions are challenged, the question is "whether the jury instructions, taken as a whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." *Lee*, 764 F.3d at 972. Granting a new trial because of jury instructions "is only warranted if a party's substantial rights are prejudiced by instructional error." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 720 (8th Cir. 2008).

**A. Intentional Discrimination**

Defendants argue that because this is a reverse discrimination case, plaintiff was required to present something more than evidence that he was discriminated against because of his race. Defendants rely on *Hammer v. Ashcroft*, which stated that to make a prima facie showing of reverse race discrimination a plaintiff must

show "that background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." 383 F.3d 722, 724 (8th Cir. 2004) (quotation marks omitted). *Hammer* analyzed the evidence under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

In this case, plaintiff presented direct evidence of discrimination, specifically, testimony indicating that the decision-makers had determined, in advance, that a white male would not be hired for the position. This evidence shows "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the decision. *Griffith v. City of Des Moines,* 387 F.3d 733, 736 (8th Cir. 2004). The parties have not cited any direct evidence or mixed motive cases applying the *Hammer* statement about being an "unusual employer." Such a case is unlikely to arise, however, because in most cases, like in this one, the direct evidence *is* evidence that the defendant is just such an "unusual employer." In other words, whether this issue is analyzed under the direct evidence standards or under the *McDonnell Douglas* framework, the evidence presented here – that race was an explicit consideration in the decision – is sufficient.

## B. Adverse Employment Action

Defendants assert that plaintiff did not show that he suffered an adverse employment action because the position he applied for was not a promotion. "A transfer constitutes an adverse employment action when the transfer results in a significant change in working conditions . . ." *Fisher v. Pharmacia & Upjohn,* 225 F.3d 915, 920 (8th Cir. 2000) ; *see also Tadlock v. Powell,* 291 F.3d 541, 546-47 (8th Cir. 2002); *Ledbetter v. Alltel Corporate Services, Inc.,* 437 F.3d 717, 724 (8th Cir. 2006). There was ample evidence that this job had many advantages and that failure to obtain it was adverse employment action. The position was more complex, was prestigious and had a higher profile, and gave the person in the job the opportunity to interact with far more people, including many in higher positions, which would provide more opportunity for advancement. This is sufficient to show an adverse action in a direct evidence case such as this.

Because this is not a retaliation or harassment case, I continue to believe that it was not necessary to submit the adverse employment action issue to the jury as an element of the claim. The evidence was very clear that the Assistant Academy Director position was a high-profile, prestigious position, and that the person in that position would have the opportunity to get to know higher ranking officers, including the top command of the police department. Defendants argue that because promotions are determined by a test, plaintiff cannot show that he lost a

future promotion because he was not transferred to the Academy. But plaintiff does not have to show that he lost a specific job or lost a specific promotion in addition to his loss of the Academy position. Under the cases cited above, different job duties or the loss of a more prestigious position can be seen as adverse employment actions even in retaliation cases. The jury found that the defendants intentionally discriminated against plaintiff in deciding who would get the position, and I conclude that the failure to transfer was an adverse employment action as a matter of law.

### C. Conspiracy

Defendant argues that plaintiff failed to present a submissible case of conspiracy against defendants Harris and Muxo. As the parties agree, to prove his conspiracy claim, Bonenberger was required to prove that two or more persons conspired to deprive him of a constitutional right, that at least one of those persons took an overt act in furtherance of the conspiracy, and that Bonenberger was thereby injured. *See e.g. White v. McKinley,* 519 F.3d 806, 814 (8th Cir. 2008). The parties' dispute is over the first element.

Plaintiff testified that Muxo told him, once before the selection of Taylor and once after her selection, that Harris had directed that the position go to a black female. Witness Boelling testified that Muxo told her, in advance, that Harris had made the decision to place a black female in the position. This is not "speculation

and conjecture" as defendants claim. Instead, it is an explicit admission by one of the co-conspirators that they had reached an agreement to violate the constitutional rights of any white person who applied for the job. There was more than sufficient evidence to submit the case to the jury, and the jury's verdict is not against the weight of the evidence.

### D. Punitive Damages

Defendants argue that there was no basis to submit the case on punitive damages, and in particular that there was no basis for submission of punitive damages as to defendant Isom. As set out above, there was direct evidence from two witnesses that Muxo and Harris conspired to discriminate against plaintiff and did discriminate against him on the basis of his race. This evidence showed that they explicitly discussed denying the job to white applicants, and is sufficient to show the malice or reckless indifference to plaintiff's constitutional rights needed to support an award of punitive damages as to them. *See MacGregor v. Mallinckrodt, Inc.,* 373 F.3d 923, 931 (8th Cir. 2004). Although the evidence as to Isom is more limited, it is undisputed that he provided two false reasons for selecting Taylor – that Taylor had more time in rank and a clean disciplinary record. There was also evidence that Isom had rejected Harris's first choice for the job, another black female who everyone except Harris believed was unqualified. Isom's knowledge of the applicants' races, failure to look at any of the

applications, and providing false reasons for the decision when plaintiff filed a grievance are sufficient, when considered together and in light of all the other evidence, for a reasonable jury to conclude that Isom also acted with reckless indifference to plaintiff's rights.

**2. Motions directed to equitable relief**

Defendants urge that I amend the judgment as to the equitable relief directed to the current Chief of Police. That relief was limited to a general injunction that the entire department not discriminate and that the department comply with its own policies related to discrimination. It also required Muxo, Harris, and the current Chief to undergo a small amount of anti-discrimination training. Plaintiff, on the other hand, has filed a supplemental motion for equitable relief, arguing that after my previous order for equitable relief, defendants retaliated against plaintiff by transferring Muxo to a district office within the same building as plaintiff. When plaintiff's lawyer complained about that, the department then moved plaintiff to a different platoon, which was also in the same building. Plaintiff complains that both of these actions were taken in retaliation. Defendants have provided an affidavit from the current Chief of Police indicating legitimate, non-retaliatory reasons for the reassignments.

Plaintiff has not shown that these actions were taken in retaliation. Muxo is not in his chain of command and is not his supervisor. Although this court has

authority to enforce its own orders, nothing in the orders previously issued means that the Court intends to become a super-personnel office over the police department, or that plaintiff is immune from the normal personnel decisions that might affect any employee. Plaintiff won a large money judgment and a limited equitable remedy. He did not win the right to never again have his assignments changed. The supplemental motion for equitable relief will be denied.

**3. Attorneys' fees and costs**

As the prevailing party, plaintiff is entitled to recover his taxable costs of the action under Rule 54(d)(1), Fed. R. Civ. P. As a party prevailing in a §1983 and Title VII case, plaintiff is additionally entitled to recover reasonable attorneys' fees and expenses under 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k). He seeks attorneys' fees in the amount of $163,982.50; expenses other than taxable costs in the amount of $3481.59; and taxable costs in the amount of $5190.50.

Defendants object that certain items are not properly taxable. Rule 54(d)(1) and 28 U.S.C. § 1920 list specific items that are taxable as costs. The only item on plaintiff's bill of costs that is not allowed as a taxable cost is the private process server fee in the amount of $235. I will therefore remove that amount from the taxable costs, but it is nevertheless a reasonable part of a reasonable attorneys' fee, so I will add it to the fee award.

Defendants do not challenge the amount of time spent on the case by any of plaintiff's counsel. Their only objection to the fee amount is that the hourly rate charged by one of the associates who worked on the case should be $175 instead of the $250 sought by plaintiff. Plaintiff has provided sufficient evidence that the hourly rate of $250 is reasonable and customary, and so I will not cut the request for that.

Finally, defendants object that the mediator's fee should not be included in the attorneys' fee award. This fee is not a proper taxable cost under § 1920, *see Brisco-Wade v. Carnahan,* 297 F.3d 781, 782-83 (8th Cir. 2002), but plaintiff did not include this amount in his bill of costs. Rather, he seeks it as part of the attorneys' fee award. This is a fee-shifting case, and mediators' fees are a reasonable expense of the litigation and therefore a legitimate part of an attorneys' fee award.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' Motion for Judgment Notwithstanding the Verdict or in the Alternative for a New Trial [#116] is denied.

**IT IS FURTHER ORDERED** that plaintiff's supplemental motion for equitable relief [#115] is denied.

**IT IS FURTHER ORDERED** that plaintiff's motion for taxation of costs [#114] and for attorneys fees and expenses [#113] are granted to the following extent:

The Clerk of Court shall tax as recoverable costs the amount of $4955.50 (which is the amount sought less $235 for private process servers).

Plaintiff shall recover from defendant his reasonable attorneys' fees in the amount of $163,982.50 plus out-of-pocket expenses of $3716.59 (which is the amount sought plus $235 for private process servers).

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 20th day of October, 2014.